# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v.  § | CASE NUMBER 1:96-CR-00054-2-MJT |
| § | |
| § | |
| EDWIN T. LIMBRICK § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pending before the undersigned are multiple *pro se* Motions for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (docs. #655, #659, #670) filed by the Defendant, Edwin T. Limbrick.[1] Limbrick makes similar arguments in all three of his motions.[2] The United States filed a response to the Defendant's motions. (Doc. #709.) After reviewing all applicable facts and law, the undersigned recommends that the Defendant's motion be denied.

### I. ISSUES PRESENTED

Limbrick is currently serving a sentence for multiple violations of 18 U.S.C. § 1951 (Interference with Commerce by Threat of Violence) and 18 U.S.C. § 924(c) (Possession of a Firearm During the Course of a Violent Crime). (Doc. #388.) His total term of imprisonment imposed was 1,020 months (85 years) due to consecutive sentences, with a release date of December 2, 2066. (*Id.*) The Defendant argues that he should receive compassionate release due

---

[1] This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. 28 U.S.C. § 636(b)(1)(B); E.D. TEX. LOCAL R. CR-59(a); (Doc. #725).

[2] The Defendant and the Government both reference an Order dismissing his first motion for compassionate release; however, there is no such order on the docket. The Defendant's original motion (doc.#655) is still pending as well as his second and third motions (docs. #659, #670). The undersigned does note that his first two motions did not contain a signature, but he attached a signed copy of his first motion to his filed second motion, and his most recent third motion is also signed, and it states verbatim the same thing as the second motion. Therefore, the undersigned will consider the substance of all three motions in this report and recommendation.

to COVID-19 and a change in the law now giving him a long disparate sentence. (Docs. #655, #659, #670.) The Government responds stating that the Defendant's arguments lack merit and do not rise to the level of extraordinary and compelling circumstances noting that he has already recovered from COVID; he received the COVID vaccine; the change in the law is not retroactive making it inapplicable. (Doc. #709.)

## II.     LEGAL STANDARD

Section 3582(c)(1)(A) "authorize[s] a sentence reduction where: (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,' and (3) such a reduction is appropriate 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Before seeking relief from the court, a defendant must first submit a request to the facility's warden where he is housed to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait 30 days from the warden's receipt of his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020). Here, the Government does not dispute that Limbrick has met this requirement. Neither does this court.

Section 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that may merit compassionate release. The Sentencing Commission, however, has the authority to "promulgate general policy statements … that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Williams*, No. 3:18-CR-0291-B-2, 2021 WL 1865005, at *2 (N.D. Tex. May 10, 2021) (quoting *Shkambi*, 993 F.3d at 391). Since the Defendant's filed motions, on November 1, 2023, the Sentencing Commission issued an amended policy statement,

2

U.S.S.G. § 1B1.13, setting forth the circumstances that are considered "extraordinary and compelling reasons." These include the defendant's medical circumstances, age[3], family circumstances, whether the defendant is a victim of abuse, "other reasons," and whether he is serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b). As of November 1, 2023, policy statement 1B1.13 applies to motions filed by the Director of the BOP and motions filed by the defendant himself. U.S.S.G. § 1B1.13(a). Therefore, the Defendant must meet one of these circumstances. Here, he argues for release due to COVID-19 concerns and his unusually long sentence based upon a change in the law.

### III. ANALYSIS

#### A. *Exhaustion of Administrative Remedies*

As stated above, a request for compassionate relief must first be presented to the BOP for consideration. After 30 days have passed or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on his behalf, a defendant may ask a court for a sentence reduction under section 3582(c)(1)(A). Here, the Government does not contest that the Defendant made a request to the warden at the Federal Correctional Institution where he was housed, and the warden denied his request. Limbrick provided documentation of the warden's denial of his request, which was dated May 18, 2020. (Doc. #655, at 64.) Therefore, the Defendant has satisfied his administrative exhaustion requirement.

#### B. *Extraordinary and Compelling*

##### 1. **Medical Conditions**

Extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (i.e., a serious and advanced illness with

---

[3] Although the Defendant argues his age (54 years old) should be considered, the policy statement applies only to defendants that are at least 65 years old with serious health deterioration. U.S.S.G. § 1B1.13(b)(2).

3

an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13. In addition, a defendant may seek release if he is suffering from a medical condition that requires long term or specialized medical that is not being provided. *Id.* Lastly, extraordinary and compelling reasons exist if the facility where the defendant is housed is affected or at imminent risk of being affected by an ongoing outbreak of an infectious disease or public health emergency and the defendant is at an increased risk of suffering severe medical complications or death and such risk cannot be adequately mitigated in a timely manner. *Id.*

Courts that have granted compassionate release based on a prisoner's health problems "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *United States v. Thompson*, 984 F.3d 431, 434–35 (5th Cir. 2021). Thus, "compassionate release due to a medical condition is an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). The Government and the United States Probation Office believe that the Defendant has failed to meet this exacting standard. The court agrees.

"Fear of COVID doesn't automatically entitle a prisoner to release." *Thompson*, 984 F.3d at 435; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). The Defendant does not allege

any medical condition that would put him at an increased risk of suffering from medical complications or death if he contracted COVID-19. He provided a copy of his medical records attached to his motion and no major medical conditions are noted. (Doc. #655, Ex. 1.) There is no indication that he cannot provide self-care within the facility.

In addition, the Defendant already contracted COVID-19 and recovered without any complications or hospitalization. (Doc. #655-1, at 5.) Contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish extraordinary and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). The fact that Defendant recovered from COVID-19 diminishes the risk that a future infection will be severe according to CDC reports. *Id.* (citations omitted); *see also United States v. Wiltshire*, No. 11-310, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("[T]his Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release."); *United States v. Pavao-Kaaekuahiwi*, No. 19-00082, 2020 WL 7700097, at *3 (D. Haw. Dec. 28, 2020) (reviewing studies concluding that recovered patients are at lower risk for future infections).

Moreover, the Defendant received both doses of the Pfizer vaccine in 2021. The vaccine renders an inmate protected from the virus. *See United States v. Groom*, No. 2:17-cr-159, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021); *United States v. Grummer*, 519 F. Supp. 3d 760 (S.D. Cal. 2021) (denying compassionate release to a vaccinated defendant with several chronic medical

5

conditions); *United States v. Wakefield*, No. 1:19-cr-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (denying compassionate release to a defendant presenting with obesity, diabetes, and hypertension who received his first dose but had also previously tested positive); *United States v. Smith*, No. 17-CR-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("[A]bsent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)."). Furthermore, the fact that Defendant's facility is inoculating residents supports the conclusion that the BOP is taking adequate precautions to protect him. *See United States v. Lipscomb*, No. 2:18-cr-34-SPC-NPM, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021).

A successful recovery combined with vaccination weighs strongly in favor of this court denying compassionate release. *See, e.g., Wakefield*, 2021 WL 640690, at *3 ("Because he has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release," even though he presented with obesity, diabetes, and hypertension); *United States v. Roe*, No. 2:14-CR-229, 2021 WL 1711296, at *2 (S.D. Ohio Apr. 30, 2021) (defendant recovered from COVID-19 and received vaccine; therefore, he was not eligible for relief notwithstanding health conditions including diabetes and heart, kidney, and respiratory ailments). In addition to vaccinations, the BOP is reducing the spread of the virus through a comprehensive approach that implements quarantining, social distancing, masks, limiting visitors, and transferring qualified inmates to home confinement. The BOP's "action plan" is accessible in full at www.bop.gov/coronavirus/. Accordingly, the court finds that the

Defendant does not present extraordinary and compelling reasons for release predicated on COVID-19.

### 2. Change in the Law/Long Sentence

Limbrick alleges that he should be granted compassionate release due to a nonretroactive change in the statutory sentencing minimums applicable to his offense implemented under the First Step Act of 2018. He asserts that if he were sentenced today, he would have a minimum of 25 years[4] instead of the 85-year sentence he received. (*Id.*) Limbrick has served over 25 years in prison now. The Government argues that this change in the law is not an extraordinary and compelling reason for his compassionate release and would instead be an end run around congress' intent that the relief it provides is not retroactive and only applies to those defendants who had not been sentenced as of December 21, 2018. (Doc. #709.)

Since the Government's brief filing, the Fifth Circuit, issued an opinion on this issue and found that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion." *McMaryion v. United States*, 64 F.4th 257, 259-260 (5th Cir. 2023); *but see United States v. Cooper*, 996 F.3d 283, 286, 289 (5th Cir. 2021) (instructing the district court to consider on remand whether "the nonretroactive sentencing changes to his § 924(c) convictions, either alone or in conjunction with any other applicable considerations, constitute extraordinary and compelling reasons for a reduction in sentence"). The *McMaryion* opinion was later withdrawn, and an unpublished opinion was issued in its place again stating that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at 2 (5th Cir. June 22, 2023).

---

[4] It is unclear how the Defendant arrived at this number.

7

The circuit courts of appeals that have addressed this issue, however, are split. The Fifth Circuit, in *McMaryion*, joins the Third, Sixth, Seventh, Eighth, and District of Columbia Circuits on this issue. *See United States v. Andrews*, 12 F.4th 255, 260–62 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022) (holding that non-retroactive changes in law are not permissible considerations); *United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc) (same); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (same); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022) (same); *United States v. Jenkins*, 50 F.4th 1185, 1198, 1198 (D.C. Cir. 2022) (same). However, the First, Fourth, Ninth and Tenth Circuits have concluded that district courts have the discretion to consider non-retroactive sentencing changes on a case-by-case basis as one of several factors constituting extraordinary and compelling reasons for a reduction in sentence. *United States v. Ruvalcaba*, 26 F.4th 14, 16, 26–28 (1st Cir. 2022) (holding that non-retroactive changes in sentencing law may be considered in light of a defendant's particular circumstances); *United States v. McCoy*, 981 F.3d 271, 286–88 (4th Cir. 2020) (same); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (same); *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (same).

As stated above in the legal standard section, the United States Sentencing Commission finally made its amendments to the sentencing guidelines with an effective date of November 1, 2023, which modified the policy statement U.S.S.G. § 1B1.13. Section 3582(c)(1)(A) regarding compassionate release dictates that courts may only reduce a sentence if it is consistent with the applicable policy statements issued by the Sentencing Commission. Among other things, the amendment adds a section to U.S.S.G. § 1B1.13 for consideration of "unusually long sentences" as an extraordinary and compelling reason. This new subsection (b)(6) permits non-retroactive changes in law (other than non-retroactive amendments to the Guidelines Manual) to be considered

8

as extraordinary and compelling reasons warranting a sentence reduction, but only in narrowly circumscribed circumstances. U.S.S.G. § 1B1.13 (b)(6). Specifically, where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed *at the time the motion is filed*, the change in law can qualify as an extraordinary and compelling reason after the court has fully considered the defendant's "individualized circumstances." *Id.* The Commission made this amendment to specifically respond to the circuit court split discussed above and agrees with the circuits that authorize consideration of non-retroactive changes in the law as an extraordinary and compelling circumstance warranting a sentence reduction but narrowly limits this approach as outlined above.

Very recently, in *Martinez*, the Fifth Circuit stated, "[a]s for nonretroactive changes to criminal law pursuant to the First Step Act of 2018, *although our circuit has not authoritatively decided this issue*, we concluded in an unpublished opinion that such a non-retroactive change cannot warrant a reduced sentence pursuant to § 3582(c)(1)(A)(i)." *United States v. Martinez,* No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) (citing *McMaryion*, 2023 WL 4118015, at *2) (emphasis added). However, the Fifth Circuit also acknowledged that "the Sentencing Commission amended the policy statement to provide that district courts 'may' consider changes in law as part of the 'extraordinary and compelling' reasons analysis, but 'only' after 'full[y] consider[ing]' the prisoner's 'individualized circumstances.'" *Martinez*, 2024 WL 658952, at *1 (citing U.S.S.G. § 1B1.13(b)(6)(a) (2023)). The court also suggested that the defendant may be able to file an additional motion for compassionate release based upon the amended policy statement and cited to a Fourth Circuit case that allowed successive compassionate release

9

motions. *Id.* (citing *United States v. Bethea*, 54 F.4th 826, 833 n.2 (4th Cir. 2022) (noting "that § 3582(c) does not prevent prisoners from filing successive motions")).

In a recent district court case in this circuit, the court applied the new policy statement to a motion for compassionate release based upon an "unusually long sentence" even though the defendant's motion was filed prior to the amendment going into effect. *United States v. Riley*, No. CR 11-235, 2023 WL 8600496, at *7 (E.D. La. Dec. 12, 2023). The court ruled on the defendant's motion after the amendment became effective and granted the relief requested. *Id.* The court noted that these motions are inherently discretionary and other courts even applied the proposed amendment prior to it going into effect. *Id.*

In this case, Limbrick is serving a long sentence—85 years. He has served more than ten years of his sentence (over 27 years). The change in the law that Limbrick argues in his motion is an amendment to the First Step Act, which changes the way courts treat prior convictions under 18 U.S.C. § 924(c). Now, an enhancement for a prior conviction under 924(c) can only be implemented when the prior conviction occurred in a previous case, instead of in the same case involving the stacking of multiple counts of violations of 924(c) as was done in this case. Limbrick received the mandatory statutory term of 5 years of imprisonment on Count 7 charging a violation of 18 U.S.C. § 924(c), which was then stacked with a term of imprisonment of 20 years on Count 9 for another violation of 18 U.S.C. § 924(c) as an enhancement for it being a second conviction under that statute. If sentenced at the time his last motion was filed on Count 9, he would receive at least the mandatory minimum of 5 years, but the court would likely impose a sentence of not less than 10 years for a firearm being discharged. 18 U.S.C. § 924(c) (2018). In the statement of reasons given by the court in the Judgment, Judge Heartfield stated that during the Peking China Restaurant robbery (the basis of count 9), one of the victims was killed by gunshot and another

10

was shot in an attempt to kill him and suffered debilitating bodily injury. (Doc. # 388-1.) Although Limbrick only drove the getaway vehicle, he is charged with aiding and abetting his co-defendant who discharged his firearm. (Doc. #260, #382.) So, Limbrick would receive at least 10 years on Count 9 instead of 20 years if he were sentenced today. Although Limbrick argues that the court would have no obligation to impose additional long sentences for the robbery counts, it is clear from the statement of reasons given in the Judgment that the court would still impose the same punishment as to Counts 1, 6, and 8 regardless of the sentence given for Count 9. The statutory maximum for Counts 1, 6, and 8 is 20 years. (Doc. #382, at 28.) The guideline range for those counts is Life. (*Id.*) The court imposed the statutory maximum of 20 years for each count and ran these sentences consecutively. In doing so, the court stated:

> As justification, the defendant appears before the Court as a result of his involvement in the attempted robberies of Catfish Cabin and Peking China Restaurant. During both robberies, victims were held at gunpoint, and shots were fired. During both robberies, victims were injured. During the attempted robbery of the Peking China Restaurant, one of the victims was killed. Furthermore, a second victim was shot in an attempt to kill him. However, instead of killing him, this victim suffered permanent and debilitating bodily injury. Therefore, sentencing the defendant to the statutory maximum for each count, all counts to run consecutively, will allow the Court to most closely achieve the punishment called for by the guidelines. This sentence will serve to promote the sentencing objectives of general deterrence, incapacitation, and respect for the law.

(Doc. #388-1.) Therefore, Limbrick would receive the same punishment as to all counts except Count 9, which would reduce his total imprisonment from 85 years to 75 years. Even if the court considered the ten-year difference on Count 9 as a gross disparity, this would only entitle the Defendant to a reduction in sentence, not release for time served. Moreover, the undersigned must still consider the Defendant's "individualized circumstances" in connection with the Section 3553 factors before granting such reduction.

11

### C. Sentencing Factors

Notwithstanding all previous analysis, compassionate release should be denied because this court must consider all pertinent circumstances, including the Section 3553(a) factors and possible danger to the community. *See United States v. Doe*, 833 F. App'x 366, 368 (3d Cir. 2020) (affirming the denial of compassionate release when the defendant presented medical risk, holding that the district court did not abuse its discretion in considering the nature of the offense, the defendant's history, and the status of the virus at the facility); *United States v. Bullock*, 833 F. App'x 934, 935 (3d Cir. 2021) (determining that the district court did not abuse its discretion in denying relief for medically vulnerable inmate upon considering the Section 3553(a) factors, including the substantial time remaining to be served, criminal history, and institutional infractions).

Compassionate release and/or a sentence reduction is not merited here after considering the applicable factors set forth in Section 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020). Even when a prisoner has demonstrated an extraordinary and compelling reason under the compassionate-release statute, relief may still "be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief.").

### 1. *Denying compassionate release will promote just punishment and respect for the law.*

First, granting this motion would fail to provide just punishment for his offense and promote respect for the law. Courts that have granted compassionate release "largely have done so

12

for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *Thompson*, 984 F.3d at 434–35. For example, in *Chambliss*, while the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and he '[did] not present a danger upon release,'" the court denied compassionate release because "releasing [defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [defendant's] crime and seriousness of the offense." 948 F.3d at 693–94.  Here, the Defendant has served less than half of his sentence.  Considering the nature and seriousness of his offenses, the court finds that denying a reduction or compassionate release "would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693–94.

> **2.    *The court cannot conclude that Defendant does not pose a danger to the community.***

This court must deny a sentence reduction unless it determines that the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). "The best predictor of how [a defendant] will behave if he were to be released is how he behaved in the past." *United States v. Preston*, No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). The court finds that the Defendant continues to present a danger to the community and should be required to serve the sentence that was originally imposed for his criminal conduct.

The Defendant was involved in two robberies with 14 victims, including the death of one victim and major bodily injury to another.  The Defendant's criminal history involves burglary of a habitation for which he received a ten-year sentence and burglary of a building for which he received a six-year sentence, both committed in 1991. (Doc. #382, at 14-15.)  During the burglary of a habitation, the Defendant grabbed the homeowner by the throat and choked her then he and a

13

co-defendant threw her into the back of a truck, and he continued to choke her until a neighbor saw what was happening and fled to call the police. (*Id.*) The victim suffered injuries as a result of this crime. (*Id.*) The Defendant was paroled in 1992 after serving only a year. (*Id.*) A year later, he was charged with assaulting his wife and later convicted. (*Id.*) At the time of the robbery and firearm offenses in this case, the Defendant was on parole after less than two years following his release for the prior offenses. (*Id.* at 16.) Therefore, the nature of the Defendant's original offense, criminal history, and all other applicable factors fail to persuade the court that the Defendant does not pose a danger to the community. *See* 18 U.S.C. § 3553. Accordingly, this court must deny the Defendant's motion after considering the Section 3553 factors.

### IV. RECOMMENDATION

"[C]ompassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693. In exercising its discretion, the court finds that no extraordinary and compelling reasons exist. Having determined that extraordinary and compelling reasons justifying release are not present and considering all other applicable factors, the undersigned recommends that the court **DENY** the Defendant's motions for compassionate release (docs. #655, #659, #670).

### V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); E.D. Tex. Local R. CR-59(c). A party who objects to this Report is entitled to a *de novo*

determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 27th day of February, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE